# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:13-cv-268-FDW

| | | |
|---|---|---|
| STEVEN E. LAMBERT, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | ORDER |
| SUSAN WHITE, | ) ) ) | |
| Respondent. | ) ) ) | |

**THIS MATTER** is before the Court on consideration of Respondent's motion for summary judgment on the claims presented by Petitioner in his pro se petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons that follow, Respondent's motion will be granted and Petitioner's Section 2254 petition will be denied and dismissed.

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina following his conviction in Haywood County Superior Court on one count of trafficking at least 14 but less than 28 grams of narcotics. Petitioner was represented by counsel when he entered into a plea agreement with the State which provided that in exchange for his guilty plea, five other charges for controlled substance offenses would be dismissed. (Doc. No. 10-4: Tr. of Plea at 28-31). On November 28, 2011, the State court accepted Petitioner's guilty plea and sentenced Petitioner according to the terms of his plea agreement to an active term of 90-117 months in prison and he did not appeal his criminal judgment. (Id. at 59).

On June 8, 2012, Petitioner filed a pro se motion for appropriate relief (MAR) in the

1

Haywood County Superior Court for relief from his criminal judgment based on claims that this Fourth Amendment rights were violated in a search of his vehicle, that the State failed to disclose Brady materials that could have aided in his defense, and he raised a claim of ineffective assistance of counsel. (Doc. No. 10-2: MAR). Petitioner's MAR was denied and the North Carolina Court of Appeals denied his petition for a writ of certiorari. This federal habeas proceeding follows and Petitioner's contentions will be addressed below.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### B. Section 2254

In addition to the motion for summary judgment standard set forth above, this Court must also consider the requirements set forth in 28 U.S.C. § 2254, which provides in relevant part, that an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree. . ." Young v. Catoe, 205 F.3d 750, 755 n.2 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court's adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)) (citations and internal quotation marks omitted).

### III. DISCUSSION

Petitioner first contends that the State failed to turn over exculpatory evidence which they relied upon to obtain affidavits to search electronic devices belonging to Petitioner, and that they

3

failed to turn over the product of those searches even though the State filed a motion evidencing intent to use such evidence at trial. (Doc. No. 1 at 5). In his second claim for relief, Petitioner claims that his trial counsel was ineffective in failing to provide him with discovery despite repeated requests to do so and that he refused to file a motion to suppress because he "didn't believe there were any good grounds to do so." Petitioner also asserts that after he was sentenced and began serving his time in State prison, he was able to obtain a copy of his discovery and unearthed evidence that could have supported a motion to suppress. (Doc. No. 1: Section 2254 Petition at 1, 6-7). Before turning to the merits of Petitioner's arguments, the Court first provides details regarding the events which led to Petitioner's arrest, prosecution and subsequent decision to plead guilty.

On November 28, 2011, Petitioner appeared with counsel in Haywood Count Superior Court for a jury trial on charges of possession with intent to sell or deliver Schedule II substance; two counts of trafficking in opiates; one count of maintaining a vehicle for controlled substances; and a charge of simple possession of a Schedule III controlled substance. (Doc. 10-4 at 31: Transcript of Plea form; Id.: Tr. of Plea hearing at 44). After the trial court denied his motion to continue the trial to another session of court, Petitioner chose to enter into a written plea agreement with the State wherein he would plead guilty to one count of possession of at least 14 grams but less than 28 grams of opium or heroin and the State would dismiss the remaining charges. During his plea hearing, the State handed up a copy of the Transcript of Plea form, which was signed by Petitioner, and the trial court engaged Petitioner in a lengthy, and thorough plea colloquy regarding his decision to plead guilty. Petitioner acknowledged that he could hear and understand the questions being posed, that he was not under the influence of any impairing

4

substance, that his lawyer had explained the elements of each charge and that he understood them, and that he was satisfied with his lawyer's services and had discussed any possible defenses to the charges. Petitioner also averred that he understood that he had the right to plead not guilty and have a jury trial to establish his guilt or innocence, and that by choosing to plead guilty he would waive this right. Petitioner confirmed that he had entered into a plea arrangement with the State in an effort to resolve his charges and that he consented to the terms of the agreement. Petitioner further averred that his plea was given of his own free will and that he fully understood the impact of his decision to plead guilty and he admitted that there were facts which supported his decision to plead guilty. Further, Petitioner consented to the State presenting a summary of the evidence against him. Finally, Petitioner averred that no one had threatened or promised him anything that would cause him to enter into the plea agreement.

      The State provided the following recitation of the evidence:

> Your Honor, this occurred on August 15, 2010 in the town of Maggie Valley in Haywood County. In the afternoon, Officer Blalock with Maggie Valley was on routine patrol and noticed a despondent white female sitting on a curbside by one of the local hotels.
>
> He pulled around and spoke to the manager of the motel, and the manager did not who that person was but said that she had walked over, didn't have any shoes, and had borrowed some shoes from another guest. She had an outdoor karaoke party going on at the time. She also said that the female had stated something about coming upon with her husband from Florida to sell pills.
>
> At that point Officer Blalock approached this female, who identified herself as Angela Lambert, who is the spouse of Mr. Lambert. And she did look distraught to the officer, and the officer asked her if anything was wrong. She said she had been in an argument with her husband and walked out of a restaurant.
>
> And he offered to take her back to her hotel at the Comfort

5

Inn in Maggie Valley to try to mediate any argument. She did not appear to have any type [of] injuries or anything like that. There didn't appear to be any evidence of any assaultive behavior.

He took her to that hotel, and they went up to the room. I think it was maybe Room 208, gained access to the room. The husband and two children, young children, were not there, at which time the officer had noticed on the inside of the door, the peephole, there was a little bit of toilet paper had been placed there to cover up the peephole so no one could see inside. And that caused some concern after hearing from the manager as well.

He didn't see anything out of the ordinary, though, in the room. It otherwise looked fairly neat. He came back outside with Ms. Lambert and offered to take her over to the police station to wait for a while and see if her husband showed up. And, in fact, they did that.

On the way they had a conversation, without getting into too much detail, that kind of solidified some of the suspicions that something illegal may be going on. So while she was over at the police station, he called Sergeant Gillum and Officer Wayne Norman, and they went over to the hotel to see if they could locate Mr. Lambert. They were told that he was driving a red Dodge Durango. It wasn't there at that time, but it did show up a little bit later.

Before going up and knocking on the door, they ran the tag. And the tag from dispatch did not come back to that vehicle. So they knocked on the door. Mr. Lambert answered, and he had two young children with him. And they asked him if he had a registration for his vehicle, and he said he thought he did. And he went to his vehicle and went through it, and they noticed there were several different registrations in there and so on. He appeared to be very nervous to him. And they did at that point ask if they could search the vehicle, and he gave consent to search the vehicle.

They found in the back of the vehicle a small bag approximately five pill bottles. And the first bottle, it was a script for Alprazolam . . . two-milligram tablets. And, in fact, did have some of those tablets, but also had some other tablets in there, some - - mainly oxycodone. Bottle number two, that was a script for oxycodone 10-325. It had some of those tablets, but also had 15-milligam and 30-milligram.

> The one that he pled guilty to, there was 230 pills in that particular oxycodone in that bottle, weighing out at 28.6 grams of oxycodone. Third bottle was for oxycodone 15-milligram. It had some of those, but also some other 15 milligrams from another manufacturer, approximately 116 of those. And in bottle four was a script for 30-milligram of oxycodone, and it had the correct weight of pills in there, but it was a different manufacturer. And bottle five, again, was for oxycodone 30-milligram. Again, it was a different manufacturer.
>
> What the State did - - there was over 700 pills - - the State indicted the pills for which there was no prescription on any bottle regardless of which bottle the pills were in. They also found approximately $17,000 in cash in that same area. That was seized by the Department of Revenue pursuant to their authority.

(Tr. of Plea hearing at 46-49).

After the State presented this factual basis, the trial court made the following findings:

> Upon consideration of the record proper, factual presentation offered, answers of the defendant, statements of the lawyer for the defendant, and statements of the prosecutor, the Court finds there is a factual basis for the entry of the plea; the defendant is satisfied with his lawyer's legal services; the defendant is competent to stand trial; the plea is the informed choice of the defendant and is made freely, voluntarily, and understandingly. Defendant's plea is hereby accepted by the Court. The Court orders that the clerk record this plea.

(Id. at 53).

    A.    Ground One

Petitioner first argues that the State failed to turn over affidavits that were submitted in support of three search warrants for Petitioner's electronic devices, and the State failed to provide Petitioner with the product of those search warrants even though the State filed notice of its intention to use such evidence at trial. (Doc. No. 1 at 5). Petitioner also contends that the State

7

erred by failing to turn over a "scrap piece of paper that allegedly contain[ed] partial names and initials and local cellular numbers, which was used to obtain search warrants for the Petitioner's cell phone and computers." (Doc. No. 3-1: Petitioner's Declaration ¶ 10). These claims are without merit.

In order to establish a <u>Brady</u> violation, a petitioner must that demonstrate that the prosecution suppressed evidence that was favorable to the defendant because it was material to his guilt or innocence or to his punishment no matter whether the prosecution acted in bad faith or not. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). The State MAR court found that these arguments were without merit because although the State did obtain the search warrants, they were never executed so there was no evidence to produce. This finding is supported by the affidavit of Detective Archie Shuler of the Haywood County Sheriff's Department. (Doc. No. 10-6: MAR Order ¶ 14; Doc. 10-5 at 22). This argument will be denied.

B.  Ground Two

The State MAR court also rejected Petitioner's claim that the State withheld the scrap of paper after noting that this scrap of paper was contained within the State's discovery which was provided to his trial counsel and that Petitioner had every opportunity to examine the paper prior to pleading guilty but he failed to so. Petitioner's attorney provided an affidavit in the Stat MAR proceeding which supports this finding. (Doc. No. 10-5 at 14: John Jay Aff. ¶¶ 4-5; 10-5 at 16: Evidence/Stored Property Item List #31 ("List of Phone Numbers"); MAR Order ¶ 14). These findings are supported by the record and State Court's MAR Order therefore did not rely on an unreasonable application of the facts and therefore Petitioner fails to state a claim for federal habeas relief.

Petitioner also argues that he received ineffective assistance of trial counsel because (1) his counsel failed to turn over discovery and (2) his counsel failed to file a motion to suppress evidence obtained from the search of his vehicle. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in Strickland. In regard to the second prong, Petitioner must demonstrate that he was prejudiced by ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but

for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

The first claim for ineffective assistance of counsel will rejected for two reasons. First, as just noted, Petitioner had the opportunity to examine his discovery with his attorney prior to pleading guilty thus any perceived error was of Petitioner's own creation. Second, during his plea hearing, Petitioner was placed under oath and he swore that he and his attorney had reviewed the elements of the charges, that he understood the charges, and that he and his attorney had discussed any possible defenses.

Petitioner's claim that his attorney was ineffective for failing to file a motion to suppress will also be denied for two reasons. Petitioner pled guilty and when a defendant pleads guilty with the sage advice of counsel, in order to obtain federal habeas relief, "he must demonstrate that the advice was not 'within the range of competence demanded attorneys in criminal cases,' Tollett v. Henderson, 411 U.S. 258, 266 (1973) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). By pleading guilty Petitioner was able to secure the dismissal of one count of possession with intent to sell or deliver a Schedule II controlled substance; two counts of trafficking in opium; a count of maintaining a vehicle for controlled substance; and simple possession of a Schedule III controlled substance and thus Petitioner avoided a potential sentence of between 225 and 279 months. (Doc. No. 10-4: Tr. of Sentencing at 44-45). Second, a motion to suppress would have been borderline frivolous based on the summary of evidence that was presented by the prosecutor during Petitioner's plea hearing and it is important to note that

Petitioner stipulated that the State court present this summary to the court to establish the factual basis for his guilty plea. The evidence demonstrated without question that Petitioner voluntarily allowed the officers to search his vehicle and the discovery of over 700 illegal pills and nearly $18,000 in cash clearly supported his arrest and ultimately his decision to plead guilty in the face of such overwhelming evidence.

Consequently, because Petitioner pled guilty with the sound advice of counsel, he voluntarily waived his right to challenge the discovery of the evidence. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel . . ." Tollett, 411 U.S. 258 at 267 (citing McCann, supra).

### IV.	CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has failed to present any meritorious claims for relief and Respondent's motion for summary judgment will be granted.

**IT IS, THEREFORE ORDERED** that:

1.	Respondent's motion for summary judgment is **GRANTED**. (Doc. No. 9).

2.	Petitioner's motion for summary judgment is **DENIED**. (Doc. No. 3).

3.	Petitioner's petition for habeas corpus is **DENIED** and **DISMISSED**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 29, 2014

Frank D. Whitney
Chief United States District Judge